IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Travelers Property Casualty Company of America, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE |
| | : | NO. 1 10 - CV - 2131 |
| Vratsinas Construction Company, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Travelers Property Casualty Company of America
("Travelers"), states its Complaint against Vratsinas Construction
Company ("VCC") as follows:

### PRELIMINARY STATEMENT

1.

Pursuant to 28 U.S.C. §§ 2201 *et. seq.* and Fed. R. Civ. P. 57,
Travelers seeks a declaratory judgment against VCC finding that (a)
Travelers has no duty to defend or indemnify VCC for all claims related
to VCC's allegedly defective construction services provided at Atlantic
Town Center that is part of Atlantic Station in Atlanta, Georgia

including, but not limited to, an arbitration proceeding before the American Arbitration Association styled *Atlantic Town Center, LLC v. Vratsinas Construction Company,* AAA Case No. 30-110-Y-00445-08 ("Arbitration") and; (b) VCC is obligated to reimburse Travelers for all costs and attorneys' fees that Travelers has incurred in providing a defense to VCC in the Arbitration.

## PARTIES, JURISDICTION AND VENUE

### 2.

Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut.   Travelers is duly authorized to conduct business in the State of Georgia and issued a commercial general liability policy to VCC that is at issue in this case.

### 3.

VCC is an Arkansas corporation with its principal place of business in Little Rock, Arkansas. VCC is duly authorized to conduct business in the State of Georgia and was the construction manager for the construction of building shells for several buildings at Atlantic Town Center in Atlanta, Georgia. VCC is subject to the jurisdiction of this Court and may be served with process by delivering the Summons

and Complaint to its registered agent for service, CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

4.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and is between citizens of different states.

5.

Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a).

### FACTUAL ALLEGATIONS

6.

Travelers issued Commercial General Liability Policy No. RTC2J-CO-3572B662-TIL-04 ("Travelers Policy") to VCC effective from October 1, 2004 to October 1, 2005.

7.

On or about September 28, 2001, VCC entered into a contract with Atlantic District, LLC ("VCC Contract") to act as the construction manager for the construction of the exterior shells of several retail and

3

residential buildings at Atlantic Town Center that is part of the Atlantic Station Project in Atlanta, Georgia (the "Project").

8.

On or about April 3, 2002, Atlantic District, LLC assigned all of its rights and obligations under the VCC Contract to Atlantic Town Center, LLC ("ATC").

9.

Under the VCC Contract, VCC agreed to provide construction services for Buildings 1, 2S, 2N, 7S, 7C, 7N, 10, 11, 13 and 14 at the Project (the "Buildings").

10.

Certificates of Substantial Completion were issued for the Buildings as follows:

| **Building** | **Date** |
|---|---|
| 1 | 08/30/05 |
| 2S – 1st and 2nd Floors | 08/30/05 |
| 2S – 3rd and 4th Floors | 04/28/05 |
| 2N – 1st and 2nd Floors | 08/30/05 |
| 2N – 3rd and 4th Floors | 04/28/05 |

4

| | |
|---|---|
| 7S – 1st and 2nd Floors | 08/30/05 |
| 7S – 3rd and 4th Floors | 04/28/05 |
| 7C – All Floors | 08/30/05 |
| 7N – 1st and 2nd Floors | 08/30/05 |
| 7N – 3rd and 4th Floors | 04/28/05 |
| 10 – 1st Floor | 08/30/05 |
| 10 – 2nd and 3rd Floors | 11/04/05 |
| 11 – 1st Floor | 08/30/05 |
| 11 – 2nd, 3rd, and 4th Floors | 11/04/05 |
| 13 – All Floors | 08/30/05 |
| 14 – All Floors | 10/10/05 |

11.

In late 2005, ATC discovered water leaks in several of the Buildings.

12.

After discovering the water leaks, ATC retained an expert, Williamson & Associates ("Williamson") to investigate the water leaks.

5

13.

On or about December 21, 2005, Williamson issued a report to ATC describing the results of its visual inspection of the water leaks.

14.

On or about December 22, 2005, Williamson performed water tests and issued another report to ATC.

15.

In December 2005 or early January 2006, ATC notified VCC of the water leaks and provided VCC with a copy of Williamson's December reports relating to ATC's investigation of the water leaks.

16.

In response to ATC's notice to VCC of water leaks, on or about January 3, 2006, VCC notified several of its subcontractors on the Project that VCC expected ATC to make claims for damages against VCC due to defective work on the Project, and VCC demanded that the subcontractors resolve the claims.

17.

In further response to ATC's notice of water leaks, in January 2006, VCC hired Wiss Janney Elstner ("WJE") to perform its own investigation of the water leaks on behalf of VCC.

18.

On or about January 26, 2006, WJE prepared a water leakage investigation report for VCC.

19.

On or about January 26, 2006, VCC notified several subcontractors of the water leaks, and demanded that the subcontractors fix the leaks.

20.

On or about February 7, 2006, WJE issued another report to VCC regarding the results of its water leakage investigation and its confirmation of the water leaks.

21.

On or about February 13, 2006 and March 13, 2006, VCC placed several subcontractors on notice of failed water tests which confirmed

the existence of water leaks at the Project and once again demanded that the subcontractors fix the leaks.

22.

Throughout March, April and May 2006, Williamson continued to investigate and test the Buildings and found additional water leaks.

23.

Throughout March, April and May 2006, Williamson documented its findings regarding the water leaks in reports issued to ATC.

24.

Each time Williamson issued a report regarding the water leaks, ATC contemporaneously provided a copy of the report to VCC.

25.

During May 2006, the Atlantic Station Water Infiltration Project Team consisting, in part, of representatives from ATC and VCC and their respective experts, met several times to discuss the water leaks and possible solutions.

26.

During a May 23, 2006 meeting of the Atlantic Station Water Infiltration Project Team, ATC made a demand to VCC that VCC repair all of the Buildings to stop and prevent the water leaks.

27.

On or about May 26, 2006, VCC notified its insurance broker and Zurich American Insurance Company of ATC's claims related to the water leaks at the Project.

28.

VCC did not provide any notice to Travelers in May 2006 of ATC's claims and ATC's demand that VCC make repairs at the Project.

29.

In May 2006, VCC agreed to make some repairs to the Buildings at the Project and prepared mock-ups for some of the repairs.

30.

VCC did not notify Travelers or obtain Travelers' consent for VCC to make repairs to the Buildings at the Project in May 2006.

31.

In June 2006, ATC provided a report to VCC from Williamson recommending an entire re-skinning of the Buildings or alternative extensive repairs, and ATC demanded that VCC make those repairs.

32.

In June 2006, VCC sent additional notices to the subcontractors alleging that the subcontractors were responsible for the water leaks and demanding that the subcontractors make the necessary repairs.

33.

In June 2006, VCC agreed to make repairs at the Project at a cost of at least $157,000.00 and began to prepare additional mock-ups in order to perform some of the repairs.

34.

After VCC began preparing mock-ups to perform some of the repairs, ATC instructed VCC in June 2006 to stop working on the mock-ups.

35.

Throughout the remaining part of 2006, ATC continued to make demands upon VCC to make substantial repairs to the Buildings, but

10

VCC refused to make the repairs because VCC did not believe it was responsible for the water leaks.

36.

In June 2006, ATC sent to VCC a notice of VCC's alleged failure to comply with VCC's contractual obligations to make required repairs to the Buildings at the Project.

37.

VCC first provided notice to Travelers of the water leaks and other problems at the Project and ATC's claims and demands on December 21, 2006.

38.

On or about April 27, 2007, Travelers agreed to contribute to and has contributed to VCC's defense of ATC's claims under a full reservation of rights.

39.

In its April 2007 reservation of rights, Travelers specifically reserved the right to seek reimbursement of any defense costs expended in the defense of VCC against ATC's claims.

11

40.

On or about May 23, 2008, ATC filed with the American Arbitration Association a formal Demand for Arbitration and Statement of Claim against VCC. ATC's Arbitration Demand is styled *Atlantic Town Center, LLC v. Vratsinas Construction Company*, AAA Case No. 30-110-Y-00445-08. True and correct copies of the Arbitration Demand and Statement of Claim are attached respectively as Exhibits "1" and "2."

41.

In its Arbitration Demand and Statement of Claim, ATC alleges, in part, that VCC has breached its contract with ATC by defectively constructing the Buildings at the Project.

42.

More specifically, in its Statement of Claim, ATC alleges that VCC provided defective pre-construction and construction services at the Project and that, as a result, the Project continues to suffer serious water intrusion problems at all Buildings at the Project. The Statement of Claim further alleges that ATC has incurred significant costs in

repairing and remediating the defective work on the Buildings to rectify the water intrusion problems.

43.

In its Arbitration Demand and Statement of Claim, ATC seeks to recover damages of not less than $20,000,000.00 for the costs to make necessary repairs to the Project, for diminution in value of the Project, for lost sales and profit, and for other consequential damages including attorneys' fees, interest, costs, and damages for bad faith and stubbornly litigious conduct.

## COUNT ONE
## DECLARATORY RELIEF

44.

Travelers realleges and incorporates by reference all allegations set forth above as if fully set forth herein.

45.

Travelers is entitled to a judicial declaration that Travelers has no obligation pursuant to the Travelers Policy to defend or indemnify VCC with respect to the Arbitration Demand or any of ATC's claims related to the Project.

46.

Travelers is entitled to a judicial declaration that VCC must reimburse Travelers for the defense costs incurred by Travelers in defending VCC against ATC's claims and ATC's Arbitration Demand.

47.

Upon information and belief, VCC disputes some or all of the above allegations such that an actual and justiciable controversy exists which requires adjudication of the parties' respective rights and obligations.

## PRAYER FOR RELIEF

WHEREFORE, Travelers demands judgment as follows:

A.    A declaration that Travelers has no duty to defend or indemnify VCC for ATC's claims related to the Project or ATC's Arbitration Demand;

B.    A declaration that Travelers is entitled to reimbursement for all costs, expenses, and attorneys fees it has incurred in defending VCC against ATC's claims related to the Project and the Arbitration Demand; and

C.    All other and further relief which the Court deems just and

proper.

Respectfully submitted this 9th day of July, 2010.

Steven D. Caley

Steven D. Caley
Georgia Bar No. 102866

Weissman, Nowack, Curry & Wilco, PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
(404) 926-4500
(404) 926-4600 (Fax)
stevecaley@wncwlaw.com

827067_1.doc

15